THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| WINFIELD KINGMAN BROAD, JR., : | |
| : | |
| Plaintiff, : | |
| : | Civil Action |
| : | No. 5:08-cv-366 |
| JACK LEWIS HITTS, individually : | |
| and as Agent for RED STAR EXPRESS,: | |
| INC., and AMERISURE MUTUAL : | |
| INSURANCE COMPANY, : | |
| a/k/a AMERISURE INSURANCE : | |
| COMPANY, : | |
| : | |
| Defendants. : | |
| _____: | |

### ORDER ON AMERISURE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Winfield Kingman Broad, Jr. brings this personal injury action to recover damages for alleged injuries he sustained in an accident involving two tractor-trailer trucks. Plaintiff, the driver of the first truck, sued the driver of the other truck, Jack Hitts, and Amerisure Mutual Insurance Company ("Amerisure").[1] Plaintiff originally filed this action in the Superior Court of Peach County, Georgia, and Defendants removed the action to this Court pursuant to the Court's diversity jurisdiction.

---

[1] Plaintiff sued Amerisure directly under the Georgia direct action statute, O.C.G.A. § 46-7-12.

1

Currently before the Court is Amerisure's Motion for Summary Judgment [Doc. 66] in which Amerisure argues that, as a matter of law, the insurance policy at issue does not provide any liability coverage for Plaintiff's alleged injuries.   Plaintiff, on the other hand, contends that there are genuine issues of material fact for a jury to determine. This Court agrees with Plaintiff.   Upon review of the evidentiary materials submitted by the parties, the arguments of counsel, and the relevant legal authorities, the Court finds that there are genuine issues of material fact a jury must resolve in order to determine whether Amerisure's insurance policy provides coverage for Plaintiff's injuries.   Accordingly, and for the reasons set forth below, Amerisure's Motion [Doc. 66] is **DENIED**.

## BACKGROUND

This case arises out of an accident that occurred on October 24, 2006, involving two tractor-trailer trucks.   Plaintiff contends that, while he was parked at a loading dock at the Step 2 facility in Fort Valley, Georgia, Defendant Jack Hitts crashed into Plaintiff's parked tractor-trailer truck causing him significant injuries.   Plaintiff filed the underlying suit against Jack Hitts and Amerisure claiming that at the time of the accident Jack Hitts was working for Amerisure's insured, Ron Hitts d/b/a/ Ron Hitts Trucking.   Therefore, Plaintiff contends that Amerisure has liability coverage under policy number CA2029727010006 issued to Ron Hitts d/b/a Ron Hitts Trucking (the

2

"Policy"), which was in effect at the time of this accident.  Amerisure vehemently contests Plaintiff's position and maintains that Jack Hitts was working for another trucking company at the time of the accident – Mark Mannes Trucking – and thus its Policy issued to Ron Hitts Trucking provides no liability coverage for Plaintiff's injuries.

The following facts are set forth below in the light most favorable to Plaintiff, the nonmoving party.

Approximately a month and a half before the accident occurred, on September 5, 2006, Defendant Jack Hitts signed a one-year Equipment Lease Agreement with Mark Mannes Trucking in which Jack Hitts agreed to pay Mannes Trucking 5% of his load fee for the use of Mark Mannes= operating authority.  In order for motor carriers to operate legally in interstate commerce, the driver must operate under federal authority from the United States Department of Transportation (Aoperating authority@.  Jack Hitts entered into the Lease Agreement because he did not have his own operating authority, and thus needed to use Mr. Mannes' operating authority to legally carry loads.  Pursuant to the Lease Agreement, if Jack Hitts used Mannes' operating authority to haul a load, he was obligated to pay Mannes 5% of that load fee.  Jack Hitts testified that he understood the Lease Agreement to mean that he worked exclusively for Mannes Trucking.  This Lease Agreement was in effect at the time of the accident.

Jack Hitts had a nephew, non-party Ron Hitts, who was the principal of his own

3

company, Ron Hitts Trucking, and who also drove for Mannes Trucking.   At the time of the accident, Ron[2], like his uncle Jack, had not yet obtained his own federal motor carrier operating authority and also operated under the authority of Mark Mannes and Mannes Trucking.   In addition, Ron Hitts was married to Mark Mannes=daughter, Tonya Hitts.  Tonya handled all of the billing and much of the paperwork for both her father's company, Mannes Trucking, and her husband's company, Ron Hitts Trucking.

While working with Mannes Trucking, Jack testified that his nephew Ron dispatched, coordinated, and procured all of the loads Jack picked up.   Although Mr. Mannes testified that the dispatcher for Mannes Trucking was Jim Esser, it was Jack's understanding that his nephew Ron was the dispatcher for Mannes Trucking, as Ron dispatched all of Jack's loads.   Indeed, Jack testified that all of his interactions with Mannes Trucking were through his nephew Ron.   Jack stated he received his 1099 tax returns directly from Mannes Trucking but that he never got a check from Mannes Trucking and received all of his settlements and payments directly through communications with his nephew Ron.

The accident which is the subject of this lawsuit occurred at the loading dock of the Step 2 Facility in Fort Valley, Georgia, where Jack had driven to pick up a load (the

---

2  To reduce confusion between Jack Hitts and Ron Hitts, the Court will use their first names.

"Fort Valley Load"). Jack was driving a tractor that was owned by a third party and was being leased by Mannes Trucking; he was using a trailer he was purchasing from his nephew Ron. "Mannes Trucking" was printed on the side of the tractor. Jack had learned of the load through his nephew Ron who had dispatched, coordinated, and procured the Fort Valley Load with a broker, C.H. Robinson. According to the testimony of Ron, when a driver carried a load under Mannes' operating authority that was not coordinated by Mannes Trucking dispatcher Jim Esser, the driver was supposed to notify Mark Mannes or Jim Esser so that the billing could be handled appropriately.

Although the Fort Valley Load was authorized under Mannes' operating authority, Mark Mannes testified he neither knew nor approved of the Load until after the accident. Mr. Mannes also testified that he became suspicious of his relationship with Jack Hitts and Ron Hitts when he began to see dispatch confirmation sheets being faxed that had the name of Mark Mannes Trucking from broker C.H. Robinson. Mr. Mannes did not work with C.H. Robinson because in his opinion they did not pay appropriately for the size of loads dispatched. After the accident, Mr. Mannes inspected his financial records and bank statements and determined that he had not been paid for many loads run by Jack and Ron. Indeed, Mannes testified he found no record of payment with respect to the Fort Valley Load.

After the collision, Jack Hitts gave the police officer an Amerisure insurance card

he had taken from inside the tractor.   It was Jack's understanding that the insurance card represented the trucking company for whom he was driving.   The insurance card listed the Policy Amerisure issued in this case to Ron Hitts d/b/a Ron Hitts Trucking.   Jack did not have the insurance card listing the policy issued to Mark Mannes d/b/a Mark Mannes Trucking.   However, Jack testified that he believed at the time of the accident he was working for Mannes Trucking and that the accident occurred while he was picking up a load for Mannes Trucking.

## STANDARD OF REVIEW

Amerisure has now moved for summary judgment.   On a motion for summary judgment, where the non-moving party bears the burden of proof at trial, the moving party has the initial burden to demonstrate by reference to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there is an absence of evidence to support the essential elements of Plaintiff=s claims. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004).   Where the moving party bears the burden of proof, it must demonstrate that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  Irby v. Bittick, 44 F.3d 949, 953 (11th Cir. 1995). Even if a motion for summary judgment is unopposed, the district court cannot base its decision on the mere fact that the motion is unopposed, but must consider the merits of

6

the motion and review the evidentiary materials submitted by the parties to determine whether there are any genuine issues of material fact that preclude judgment as a matter of law.  United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004).

## ANALYSIS

Choice of Law

This action is based on diversity of citizenship and thus, the Court is required to apply the choice of law rules of the forum state – Georgia.  See Klazon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941).  Under Georgia law, the insurance contract at issue here is governed by the law of the state where the contract was made unless the application of the foreign law would be contrary to Georgia public policy.  General Tel. Co. of the Se. v. Trimm, 252 Ga. 95 (1984); O.C.G.A. § 1-3-9.  Because the Amerisure Policy was issued in Michigan, and there is no indication or argument that the application of Michigan law would be contrary to Georgia public policy, Michigan law governs the interpretation of the Amerisure Policy at issue here.

Under Michigan law, insurance interpretation requires a two-step analysis:  first, a determination of coverage according to the insurance agreement and second, a decision regarding whether any exclusion applies to negate coverage.  Auto-Owners, Inc. v. Harrington, 455 Mich. 377, 382 (1997).  Because Amerisure does not assert that any

7

exclusion applies, instead only asserting lack of coverage, only the first step of the analysis is involved in this case.

Under Michigan law, an insurance policy is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. Heath v. State Farm Mut. Auto Ins. Co., 255 Mich. App. 217, 218 (2002). When determining what the parties' agreement is, the court should read the contract as a whole and give meaning to all the terms contained in the policy. Id. If the terms of the contract are clear and precise, a court cannot read ambiguities into the policy. Jervis Webb Co. v. Everest Nat. Ins. Co., 251 Mich. App. 692, 697 (2002) (citation omitted). Where an insurance policy does not specifically define a word or phrase, the commonly used meaning of the word or phrase is to be used, and the omission of a definition that has a common usage does not create ambiguity. Id. (citation omitted). "Clear and specific provisions that limit coverage must be given effect because an insurance company cannot be held liable for a risk that it did not assume." Id. (citation omitted).

Coverage under the Policy

Amerisure asserts that as a matter of law, the Policy does not provide any liability insurance for Plaintiff's injuries because neither the tractor nor the trailer are "covered autos" under the Policy, and none of the defendants qualifies as insureds. Plaintiff, on the other hand, argues there are genuine issues of material fact that must be resolved in

order to determine whether the tractor is a "covered auto" and, thus, whether Jack Hitts qualifies as an "insured." For the following reasons, the Court finds there are genuine issues of material fact that a jury must resolve in order to determine both of these issues, and thus, ultimately, whether the Amerisure Policy provides liability insurance for Plaintiff's injuries.

The Amerisure Policy defines as an "insured" anyone "using with your permission a covered 'auto' you own, hire or borrow" subject to exclusions not applicable to this case. Amerisure Ins. Policy, § II(A)(1)(b), AMER0133 , Doc. 68-1. The Policy clearly provides coverage to permissive users of "covered autos." Thus, the relevant legal inquiries are: (1) Is Jack Hitts a permissive user under the Policy at the time of the accident, and (2) Is Jack Hitts utilizing a "covered auto" at the time of the accident.

*Permissive Use*

Under Michigan law, the standard for permissive use requires the insured's permission to use the vehicle and that the use be within the scope of permission at the time of the collision. See, e.g., Amerisure, Inc. v. Brennan, 2006 WL 3733283, *2 (Mich. App. 2006).

The Court finds there are genuine issues of material fact a jury must find in order to determine to whether Jack Hitts is a permissive user under the Policy. There is evidence upon which a reasonable jury could find that Jack Hitts was working for Ron

9

Hitts Trucking at the time of the accident. The record contains evidence that Ron coordinated, directed, and dispatched Jack to pick up the Fort Valley Load. Ron testified he knew that Jack was using the tractor for loads Ron directed him to and that he gave Jack permission to use the tractor-trailer combination for those loads. Mark Mannes testified that, although his name was listed on the "load confirmation" for the Fort Valley Load involved in this accident, he did not dispatch, authorize, or get any payment from that load. Moreover, the insurance card Jack provided to the investigating officer was the Amerisure Policy. Thus, issues of fact must be resolved regarding whether Ron Hitts d/b/a/ Ron Hitts Trucking, the insured, gave Jack Hitts permission to operate the tractor to pick up the Fort Valley Load and whether Jack was operating within that scope of permission at the time of the accident.

*Covered Auto*

The Amerisure Policy is a Symbol 46, 47, and 50 policy, which means that only those vehicles that are "specifically described," "hired," or "nonowned" are "covered autos" under the policy. The parties agree that the tractor-trailer Jack Hitts was driving is not a "specifically described" auto under the Policy. The question therefore is whether the tractor-trailer is covered under the "hired" or "nonowned" auto provisions.

The Amerisure Policy defines Symbols 47 – "Hired Autos" as follows:

**47 – Hired "Autos" Only**

> Only those "autos" you lease, hire, rent or borrow.  This does not include any "private passenger type auto" you lease, hire, rent or borrow from any member of your household, any of your "employee", partners (if you are a partnership), members (if you are a limited liability company), or agents or members of their household.

Amerisure Ins. Policy, § 1(A), AMER0131, Doc. 68-1.   The Policy specifically states that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations."   Id.   The "Named Insured" is Ron Hitts Trucking.

The Court finds the tractor is not a "covered auto" under the "Hired Auto" provision of the Policy.   Even if the jury were to resolve the facts in favor of Plaintiff, there is no evidence that Ron Hitts Trucking, the insured, "hired" or "borrowed" the tractor. Neither "hire" nor "borrow" are specifically defined in the Policy, but, as stated above, "[w]here an insurance policy does not specifically define a word or phrase, the commonly used meaning of the word or phrase is to be used." Jervis B. Webb Co., 251 Mich. App. at 698.   "Hire," as applicable in these circumstances, means "to engage the temporary use of for a fixed sum." Merriam-Webster's Collegiate Dictionary, 589, 11th ed. (2008).   "Borrow," as applicable in these circumstances, means "to receive with the implied or expressed intention of returning the same or an equivalent." Id. at 144.   Even accepting all of the evidence taken in the light most favorable to Plaintiff as true, none of it supports an interpretation that Ron Hitts Trucking paid any money to "hire" the

11

tractor from Mannes (who was leasing the tractor) or that Ron Hitts Trucking "received" the tractor from Mannes.

The Court does find, however, that issues of fact must be resolved in order to determine whether the tractor is covered under the "Nonowned Auto" provision of the Policy. The Amerisure Policy defines Symbol 50 – "Nonowned Autos" as follows:

> **50 – Nonowned "Autos" Only**
> Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "private passenger type "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), members of their households but only while used in your business or your personal affairs.

Amerisure Ins. Policy, § 1, AMER0132, Doc. 68-1.

There is evidence in this case from which a reasonable jury could find that Defendant driver Jack Hitts was using the tractor "in connection with" Ron Hitts Trucking's business at the time of the collision. As discussed above, genuine factual disputes regarding which company Jack Hitts was driving for at the time of the accident must be resolved to determine this issue. Evidence exists to support a finding that Jack Hitts was working for Mannes Trucking at the time of the accident: Jack was driving for Mannes Trucking pursuant to a Lease Agreement which Jack believed meant he worked exclusively for Mannes Trucking; the tractor had "Mannes Trucking" printed on its side; Jack himself believed he was working for Mannes Trucking at the time of the accident

and that the accident occurred while he was picking up a load for Mannes Trucking; and the Fort Valley Load was procured under Mark Mannes' federal motor carrier operating authority.   However, evidence also exists from which a jury could determine that Jack was working for Ron Hitts Trucking at the time of the accident: Ron Hitts dispatched Jack to the Fort Valley Load; Mr. Mannes knew nothing about the Load and stated he did not do business with C.H. Robinson; Mr. Mannes did not receive any payment for the Fort Valley Load and many other loads related to C.H. Robinson; and Jack was driving the tractor with the Amerisure insurance card listing the Policy issued to Ron Hitts Trucking.   Based on the evidence that Ron Hitts directed Jack Hitts to the Fort Valley load, that Ron Hitts handled all payments and all of Jack Hitts's settlements, that Mark Mannes neither had knowledge of the Load nor received payment, and that Ron Hitts provided Jack with an insurance card listing the Amerisure Policy, a reasonable jury could find that Jack Hitts was using the tractor, which Ron Hitts Trucking did not own, lease, hire, rent or borrow, in connection with his business.

Despite Defendant's arguments to the contrary, the Policy does not limit the "non-owned autos" provision to passenger type autos.   Rather, the provision applies to all non-owned autos used in connection with the insured's business.   If it only applied to passenger vehicles and not commercial trucks, the word "includes" in the phrase "[t]his includes 'private passenger type autos'" would be surplusage.   If Amerisure

13

intended to limit coverage only to passenger autos, it could have included language in the definition stating "this only applies to passenger type autos." Amerisure, however, did not, and thus the coverage applies to all vehicles.

*Material Misrepresentation*

In its Reply brief, Defendant Amerisure argues for the first time that, even if the facts alleged by Plaintiff are true, the Amerisure Policy still does not provide coverage for Plaintiff's injuries because the Policy would, as a matter of law, become void. Nowhere in Defendant's principal brief did it request summary judgment on this basis, and Plaintiff has not had an opportunity to address this argument. Because it is improper for Defendant to raise this new argument in its reply brief, the Court will not rule on this issue.  See, e.g., United States v. Coy, 19 F.3d 629, 632 n. 7 (11th Cir. 1994) ("[a]rguments raised for the first time in a reply brief are not properly before a reviewing court") (citation omitted).

If the Court were to further consider this argument, however, it appears as if this issue would also be a jury question. The Amerisure Policy states:

> **Concealment, Misrepresentation or Fraud**
> This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:
> a. This Coverage Form;
> b. The covered "auto";

14

    c. Your interest in the covered "auto"; or
    d. A claim under this Coverage Form.

Amerisure Ins. Policy, §V(B)(2), AMER0141, Doc. 68-1.   Amerisure contends that if the jury accepts Plaintiff's version of the facts and finds that Ron Hitts was running an illegal trucking operation and, with the help of his wife and Mr. Mannes' daughter Tonya Hitts, stealing from Mr. Mannes -- the person whose federal operating authority he was using to carry loads -- then as a matter of law Ron Hitts was misrepresenting material facts concerning his interests in covered autos, such as the tractor driven by Jack Hitts on the date of the accident.

The Michigan Supreme Court has held that "[w]here an insurance policy provides that an insured's concealment, misrepresentation, fraud or false swearing voids the policy, the insured must have actually intended to defraud the insurer."   West v. Farm Bureau Mut. Ins. Co. of Michigan, 402 Mich. 67, 69 (1977).   Whether the insured intended to defraud the insurer is a question for the jury.   Id. at 70.   Thus, it appears that this issue of material misrepresentation would also be an issue for the jury.

## CONCLUSION

For the foregoing reasons, Defendant Amerisure's Motion for Summary Judgment [Doc. 66] is **DENIED**.

**SO ORDERED** this 30th day of September, 2011.

              <u>S/   C. Ashley Royal   </u>
              **C. ASHLEY ROYAL**
              **UNITED STATES DISTRICT JUDGE**

SSH